# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| AMERICAN SAVINGS BANK, FSB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:09-CV-303-TS |
| | ) | |
| LINCOLN PARK SAVINGS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Defendant, Lincoln Park Savings Bank, is an Illinois banking institution that has been sued for breach of contract in Indiana. The Defendant maintains that Plaintiff American Savings Bank's claims against it should be dismissed because this Court cannot exercise personal jurisdiction over the Defendant. Alternatively, and in the event this Court finds that is it permissible to assert personal jurisdiction over the Defendant, it requests that pursuant to 28 U.S.C. § 1404 the case be transferred to the Northern District of Illinois as the most convenient forum to resolve this matter. To that end, on September 28, 2009, the Defendant filed its Motion to Dismiss for Want of Personal Jurisdiction or, In the Alternative, Motion to Transfer Pursuant to 28 U.S.C. § 1404 [DE 4] and Brief in Support of Motion [DE 5]. A Response of American Savings, FSB to Defendant's Motion to Dismiss and Alternative Motion to Transfer [DE 9] was filed on October 15, accompanied by affidavits from bank officers Louis Green and Roberta Rossa. On October 23, the Defendant filed its Amended Reply in Support of Motion to Dismiss, or Alternatively, Transfer Nunc Pro Tunc [DE 11], accompanied by the affidavit of Ed Kane, an officer of the Defendant bank. The Plaintiff addressed the Defendant's Reply in a Surreply Brief of American Savings, FSB to Defendant's Motion to Dismiss and Alternative Motion to Transfer [DE 14], filed on October 30.

# COMPLAINT ALLEGATIONS

On August 4, 2009, the Plaintiff filed its Complaint against the Defendant in Lake Circuit Court, Lake County, Indiana, and the Defendant removed it to federal court. The Complaint identifies the Plaintiff as a federal savings bank with its main office and principal place of business in Munster, Indiana. The Defendant is an Illinois banking association with its principal place of business in Chicago, Illinois. In January 2007, the Defendant issued a $2,150,000 loan to Ellis Development (Ellis) to provide financing for the construction of condominiums in Chicago, Illinois. In connection with the loan to Ellis, the Defendant and the Plaintiff executed a Loan Participation Agreement, which is attached to the Complaint as Exhibit A. Under this Agreement, the Defendant acted as the lead lender and the Plaintiff advanced $1,193,881.26 as a participating lender. The Agreement required the Defendant to administer the loan, advance amounts equal to the amount advanced by the Plaintiff, enforce the loan documents, apply money collected pursuant to the loan documents and make payments to the Plaintiff.

The Complaint alleges that the Defendant breached the Loan Participation Agreement because it failed since December 2008 to make any payments to the Plaintiff, failed to fund its share of the loan, failed to enforce the terms of the loan documents, failed to demand and collect money owed, failed to keep the Plaintiff advised and informed as to the status of the loan and the Defendant's efforts to collect the loan, and acted without obtaining prior consent of the Plaintiff. The Plaintiff requests an award of damages and also seeks to succeed to all rights, titles, status, and responsibilities regarding the loan that the Defendant had as the lead lender.

## DISCUSSION

The Defendant moves for dismissal of the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Alternatively, it seeks transfer to a more convenient forum pursuant to 28 U.S.C. § 1404.

### A. Personal Jurisdiction

In federal court, a plaintiff need not include facts alleging personal jurisdiction. *Purdue Research Found. v. Sanovi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, once the defendant moves to dismiss a complaint under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Cent. States, S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 875 (7th Cir. 2006). The extent of this burden depends on how the issue of personal jurisdiction comes before the court. When the jurisdictional challenge is based on the submission of written materials only, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found.*, 338 F.3d at 782. If the defendant has submitted evidence, such as affidavits, in opposition, then the plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 782–83 (commenting favorably on decisions from other circuits imposing this requirement). However, in making its *prima facie* case, the plaintiff is entitled to a favorable resolution of all relevant factual disputes, *id.*, and to a liberal reading of the complaint, *Cent. States*, 440 F.3d at 878 (citing *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). Neither party has requested an evidentiary hearing, and both have submitted affidavits in support of their positions.

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Purdue Research Found.*, 338 F.3d at 779. Indiana Trial Rule 4.4, as amended in 2003, extended the reach of state court jurisdiction to "any basis not inconsistent with the Constitutions of this state or the United States." Ind. T. R. 4.4(A); *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 964 (Ind. 2006) (noting that Indiana's two-step process to determine jurisdiction had become one with the amendment of Trial Rule 4.4(A)). The enumerated acts found in Rule 4.4(A) serve as a checklist of activities that usually support jurisdiction, but the exercise of personal jurisdiction is not limited to the listed acts. 857 N.E.2d at 967.

Thus, this Court has jurisdiction over the Defendant if the Plaintiff can show that the Defendant had sufficient minimum contacts with Indiana such that jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction may be either general or specific. If the defendant's contacts are continuous and systematic general business contacts, then a court may exercise "general jurisdiction" over the defendant even when the controversy is unrelated to those contacts. *Helicopteros Nacionales de Colom., S .A. v. Hall*, 466 U.S. 408, 414–15, 415 n. 9 (1984). In the absence of such continuous systematic contacts, "specific jurisdiction" may still be appropriate if the litigation is related to the defendant's contacts with the forum state. *Id.* at 414 n.8. A defendant who purposefully avails itself of the privilege of conducting activities within the forum state should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Specific jurisdiction is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the

state with respect to the transaction at issue." *Purdue Research Found.*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other activity."); *see also Burger King*, 471 U.S. at 474 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

The Plaintiff argues that this Court has specific jurisdiction over the Defendant because it "deliberately reached out beyond its home state of Illinois to do business with [the Plaintiff], an Indiana citizen." (Resp. of Am. Savings 5, DE 9.) In support, the Plaintiff has submitted the affidavit of Louis Green, who was acting as a Senior Vice President overseeing the lending division in Fall 2006. Green received a telephone call at his Indiana office from an officer of the Defendant bank, Edward Kane, asking if the Plaintiff would be interested in participating in a loan that the Defendant had made to Ellis. Green forwarded the information to the Plaintiff's Vice President of Lending, Bob Rossa, and advised him to pursue the opportunity based on the Plaintiff's positive dealings with the Defendant and Kane in the past for purchases of closed loans. Rossa's affidavit reveals that he had telephone conversations with Kane to discuss the Ellis development project and to negotiate the Loan Participation Agreement that became the subject of this lawsuit. The Defendant mailed an already-signed draft of the Agreement to the Defendant's Dyer, Indiana, branch. On January 12, 2007, Rossa signed the Agreement on behalf of the Plaintiff and returned it to the Defendant by mail.

According to Rossa, the Defendant met certain of its obligations under the Agreement by wiring funds to the Plaintiff's account in Indiana. Also in connection with the performance of its obligations under the Agreement, the Defendant communicated with the Plaintiff using

5

facsimile, electronic mail, and telephone. Some of these contacts were initiated by the Defendant and some by the Plaintiff. These communications between the parties included the Defendant sending the Plaintiff a title report, notifications of loan disbursements, sworn construction draws, draw statements, evidence of mechanic's liens, and mechanic's waivers of liens—all in accordance with the Defendant's obligations under the Agreement. In August 2008, Kane called Rossa at his Indiana office to discuss executing a Loan Modification Agreement that would postpone the maturity date of the loan made to Ellis. The Loan Modification Agreement was mailed to the Plaintiff's Dyer, Indiana, branch where it was signed and returned by mail to the Defendant.

The Defendant does not dispute these facts, but presents the affidavit of one of its officers to point to additional facts that is contends support dismissal. The Defendant notes that the parties first learned of one another and developed a business relationship through a third party broker. The Defendant also thinks it significant that the Plaintiff was "essentially a passive participant in a loan agreement" in which the Defendant was the lead lender. (Reply 4, DE 11.) The Defendant maintains that the acts and omissions underlying the Plaintiff's breach of contract claim took place in Illinois, and that the Agreement, by its terms, is governed by Illinois law. The Defendant also notes that it never met with the Plaintiff in Indiana.

For this Court to have jurisdiction over the Defendant, its conduct and connection with Indiana must be such that it "should reasonably anticipate being haled into court" here. *Burger King*, 471 U.S. at 474–75. The formation of a contract alone does not automatically confer personal jurisdiction on the out-of-state Defendant. *Id.* at 478. Rather, in analyzing whether the Defendant's contacts are sufficient to establish specific jurisdiction, the Court will consider the

parties "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. *Id.* at 479.

Here, the Defendant wanted to provide a loan to a Chicago developer in an amount that exceeded its lending limits, and decided that it was in its best interest to seek additional lenders to avoid absorbing all of the risk of management and repayment of the loan. (Kane Aff. ¶¶ 3, 10.) On the basis of an existing business relationship formed during previous loan participation arrangements, the Defendant contacted the Plaintiff by telephone to advise it of the opportunity to participate in the loan to the Chicago developer. This contact was neither random nor fortuitous. The Defendant voluntarily sought the involvement of the Plaintiff as a participant lender.

After the Plaintiff expressed interest in participating in the loan, the Defendant sent documentation to the Plaintiff's Indiana office, and eventually sent the draft of the Agreement that became the contract. Once the Agreement was signed, the Defendant, as the lead lender on the construction loan, had continuing obligations to the Indiana Plaintiff as the participating lender. Both parties initiated further contacts to discuss these obligations and to make decisions regarding the loan. Over one and one-half years after the original Agreement was signed, the obligations still remained and the parties agreed to sign a Loan Modification Agreement to postpone the maturity date of the loan made to Ellis. The Defendant mailed the Modification Agreement to the Plaintiff in Indiana for signature. The Court finds that the contemplated future consequences of the parties, as embodied in the terms of the Agreement, demonstrate that the Defendant should have reasonably anticipated being haled into court outside of Illinois.

During their course of dealings, the parties had numerous contacts by electronic mail,

telephone, and facsimile. The fact that the Defendant never physically traveled to Indiana is not dispositive to the jurisdictional issue. As the Supreme Court noted,

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476. Similarly, the location of the property being financed by the loan does not persuade this Court that jurisdiction is lacking. It is not a fact that bears on the substantive legal dispute between the parties or relates to the operative facts of the case because the location of the construction project was not relevant to the obligations that the Plaintiff alleges that the Defendant breached.

The Defendant reached out to Indiana and voluntarily availed itself of a financial benefit by securing an Indiana lender for its loan. Through a loan participation agreement, the Defendant created a continuing relationship with the Plaintiff. For all the above reasons, and because "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed," *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008), the Defendant's Motion to Dismiss is denied.

**B.     Change of Venue**

The Defendant argues that, even if jurisdiction in Indiana is proper, the Northern District of Illinois is the most convenient forum to resolve the matter. In support of its Motion to Transfer this case to Illinois, the Defendant argues that venue was only proper in this district pursuant to the removal statute and the suit could not have originated here, and the public

8

interest of Illinois outweighs the public interests of Indiana because Illinois law will govern the case and the contract involves an Illinois construction project.

Title 28 of the United States Code, § 1404(a), provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The movant bears the burden of showing that the transferee court is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986); *K & F Mfg. Co. v. W. Litho Plate & Supply Co.*, 831 F. Supp. 661, 664 (N.D. Ind. 1993). A transfer should not be granted if it will merely shift convenience from one party to another. *Id.* Moreover, the plaintiff's choice of forum is entitled to deference, especially when the action is brought in the plaintiff's home forum. *Piper Aircraft Co. v Reyno*, 454 U.S. 235, 255 (1981). The Defendant admits that neither the convenience of the parties or any witnesses is particularly relevant given the proximity of the two district courts. The Court agrees, and given the Plaintiff's choice of forum, the Court finds that this factor weighs against transfer.

The "interest of justice" factor "relate to the efficient administration of justice." *Coffey*, 796 F.2d at 221. It includes such concerns as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). For example, in a diversity action it is considered advantageous to have a federal judge who is familiar with the applicable state law try the case. *Coffey*, 796 F.2d at 221. Although Illinois law will govern this case, federal courts are often called on to interpret the laws of states other than the state in which they are located, not uncommonly as to the law of contracts. A transfer of venue to Illinois would be a

9

"change of courtrooms," *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964), not a change in the applicable law. Additionally, there is no suggestion that Illinois would provide a more speedy forum, or that there is a related action already pending in the Northern District of Illinois.

The Plaintiff's chosen forum is entitled to some deference. Here, this choice is not outweighed by the convenience of the parties or witnesses or the interest of justice. The District of Illinois is not clearly more convenient. The proposed change of venue would merely shift the convenience to the Defendant, and there is no evidence that a transfer would make it more convenient for non party witnesses to testify. The Defendant has not adequately developed or supported its claim that venue would not have been proper in the Northern District of Indiana had the case been filed in federal court originally (as opposed to being removed from state court by the Defendant). Finally, the Defendant has not presented any convincing basis upon which to hold that a transfer to Illinois would advance the efficient administration of justice. The Court, in its discretion, declines to transfer this case to the Northern District of Illinois.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss [DE 4] and Motion to Transfer [DE 4] are DENIED.

SO ORDERED on February 1, 2010.

     s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION